No. 6357.

SUCCESSION OF FRANCOIS LACROIX.

When a petition for a rehearing of a cause has been filed in time, wherein the court is informed that an application will be made for additional time to present authorities and the reasons for a rehearing, and no application is made thereafter for such additional time, and neither authorities nor argument is furnished the court in printed brief or otherwise, but the court *ex gratia* suspends action because of the anomalous

condition of public affairs, and at length the party, in whose favor the judgment of this court has been rendered, demands the action of the court upon the petition for a rehearing, it will be dismissed without regard to the kind, character, or merits of the judgment that has been rendered.

APPEAL from the Second District Court of New Orleans. TISSOT, J.

*W. H. Hunt* for Edgar Lacroix, Appellee. *Morel*, and *Villerè* for Marie Cecile, Appellant.

Victor Lacroix, a free man of color, son of Francois Lacroix, was married to Sarah Brown, a white woman, in New Orleans in January, 1862. At the time of marriage she did not know that her husband (as she supposed him to be) was of colored blood, but became aware of it afterwards, and before the conception of her child. This child, Marie Cecile (her father Victor having died before his father Francois), claimed her father's share of this succession. The lower court rejected her demand, and this was reversed on appeal by the late court, and she had judgment recognizing her as legitimate, and as such entitled by representation to the rights of her father.

This judgment was rendered in December, 1876, and a petition for rehearing was filed. Just then the *personnel* of this court was changed. Over two months was permitted to pass, during which time the counsel for the party cast in this court, appellee below, failed to make application to us for time, and did not furnish any brief. The petition for rehearing was not acted on, but was dismissed.

Other counsel then moved to rescind the dismissal on the ground, among others, that the rehearing, having been refused when no appellee was represented, was not binding.

MANNING, C. J. We have not passed upon the rehearing. That is what we were prepared to do, but were prevented from doing by the *laches* of the appellee, the party cast here. The decree was rendered by our predecessors, and to them was presented a petition for rehearing, which contained a statement that the applicant would apply for time to present authorities and argument in support of it. At this juncture the *personnel* of this court was changed.

No application to us was made as was indicated would be made for time to present authorities.

Notwithstanding, we permitted two months to pass without action. Then a general order was made, permitting litigants to supply the

absence of transcripts in certain modes pointed out with precision in the order, and a special order was made in this case, giving twenty days in which to file the argument and authorities. This was done by us because of the disturbed condition of political affairs, and the anomalous situation of some of the transcripts filed in this court. Thus nearly three months — quite three months — from the rendition of the decree passed before we gave effect to the prayer of the appellee that the matter should be disposed of.

The applicant in his brief, as in his petition, assumed that we have refused a rehearing. We carefully avoided making any order which would imply that we approved the doctrine enunciated by our predecessors in their decree. We did not refuse a rehearing, but simply dismissed the application for failure to comply with the rules, and the articles of the Code of Practice governing such cases, and we shall not now disturb that order.